**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Atheal PIERCE, Defendant-Appellant.**

**No. 83–7174.**

United States Court of Appeals, Eleventh Circuit.

June 7, 1984.

Eric A. Bowen, Montgomery, Ala., for defendant-appellant.

David L. Allred, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and SMITH *, Circuit Judges.

PER CURIAM:

In this criminal case, defendant-appellant Atheal Pierce (Pierce) appeals his conviction on two counts of making a false statement or report to a federal credit union in violation of 18 U.S.C. § 1014 (1982). We *vacate* the judgment and the case is *remanded* for sentencing on one of the two counts.

### Background

Pierce was employed as an associate professor at Alabama State University and served as president of the Alabama State University Federal Credit Union (credit union). On June 7, 1982, Pierce applied for a $15,000 loan from the credit union. In his loan application, Pierce stated his liabilities as $38,625 and stated that no judgments were outstanding against him. In truth, on that date, Pierce's liabilities were approximately $300,000 and there were two judgments outstanding against him. On July 30, 1982, Pierce's wife, Methard A. Pierce, applied to the credit union for a loan in the amount of $8,140.

Pierce was indicted by a grand jury on December 13, 1982, and charged with three counts. In counts I and II, Pierce was charged with knowingly making false statements—of his liabilities and of the judgments outstanding against him, respectively—in the June 7, 1982; loan application in violation of 18 U.S.C. § 1014 (1982.) [1] In count III, Pierce was charged with willful and knowing misapplication of credit union funds by causing the July 30, 1982, loan to be made to his wife for his own use in violation of 18 U.S.C. § 657 (1982).[2]

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Section 1014 of 18 U.S.C. provides, in pertinent part:
   "§ 1014. Loan and credit applications generally; renewals and discounts; crop insurance
   "Whoever knowingly makes any false statement or report, * * * for the purpose of influencing in any way the action of * * * a Federal credit union, * * * upon any application, * * * or loan, * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both."

2. Section 657 of 18 U.S.C. provides, in pertinent part:
   "§ 657. Lending, credit and insurance institutions
   "Whoever, being an officer * * * or employee of * * * any * * * credit or savings and loan

Pierce pleaded not guilty and filed a motion to dismiss counts I and II as multiplicious and to dismiss count III as misjoined. The motion was denied, as was Pierce's subsequent motion for severance of count III. After trial, the district court entered a directed verdict in favor of Pierce on count III. On March 10, 1983, the jury returned a verdict of guilty as to counts I and II. Pierce was sentenced to imprisonment for 18 months on each count, the sentences to run consecutively. Pierce appeals.

### Issues

Pierce alleges on appeal (1) that the indictment was multiplicious in that counts I and II charged a single offense in two separate counts, (2) that he was prejudiced by the misjoinder of count III, (3) that the court erred in allowing into evidence testimony and applications of credit union members whose loans were allegedly approved but were not funded, and (4) that the court erred in refusing to allow cross-examination of Ora P. Williams, an accountant and loan officer of the credit union, with respect to the approval of other loan applications containing no statement of liabilities. Pierce requests that his conviction be reversed and that he be granted a new trial.

### Multiplicity of the Indictment

We agree with Pierce's contention that the indictment was multiplicious. In reaching that conclusion we follow the reasoning of *United States v. Sue* [3] and *United States v. Sahley.* [4] Those cases hold

that "the making of a number of false statements to a lending institution in a single document constitutes only one criminal violation under 18 U.S.C. § 1014." [5] "The statute in this instance speaks of 'statement' and 'report' in a manner which will not support a fracturing of the offense according to the number of false allegations in a single financial statement." [6] As in *Sue*, the remedy to which Pierce is entitled depends on whether he has sustained any prejudice as a result of the multiplicious indictment. [7] Yet, Pierce identifies no specific prejudice that he has suffered as a result of the multiplicious indictment. Only counts I and II were sent to the jury—no other counts could have been tainted by the multiplicity. We hold that the multiplicious indictment did not threaten to generate an adverse psychological effect on the jury. [8] Hence, reversal of the judgment is not an appropriate remedy. [9] The Government concedes that, assuming that the counts are multiplicious, under *Sahley* Pierce should have been sentenced under *either* count I or count II. Pierce, however, has received two consecutive 18-month sentences for a single offense. We hold that it was error to impose separate sentences under both count I and count II. [10]

### Misjoinder or Prejudicial Joinder of Count III

Pierce alleges that the inclusion of count III constituted misjoinder under Rule 8(a) [11] as well as prejudicial joinder under Rule

---

corporation or association authorized or acting under the laws of the United States[,] * * * willfully misapplies any * * * funds * * * belonging to such institution * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both; * * *."

**3.** *United States v. Sue*, 586 F.2d 70 (8th Cir. 1978).

**4.** *United States v. Sahley*, 526 F.2d 913 (5th Cir.1976).

**5.** *Sue*, 586 F.2d at 71.

**6.** *Sahley*, 526 F.2d at 918.

**7.** *Sue*, 586 F.2d at 71; *United States v. Hearod*, 499 F.2d 1003, 1005 (5th Cir.1974).

**8.** *Sue*, 586 F.2d at 72; *Hearod*, 499 F.2d at 1005.

**9.** *Sue*, 586 F.2d at 72.

**10.** *Id.* at 72–73; *Sahley*, 526 F.2d at 918–19.

**11.** Rule 8 of the FED.R.CRIM.P. provides, in pertinent part:

"Rule 8. Joinder of Offenses and of Defendants

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

14 [12] of the Federal Rules of Criminal Procedure. Count III, Pierce argues, raised an entirely separate issue involving a completely different transaction.

It is by no means apparent that the inclusion of count III constituted misjoinder under Rule 8(a). All three counts arose out of Pierce's loan activity over a period of less than 3 months with the credit union of which he was president. The joinder of count III with counts I and II in the indictment was permissible because the counts are similar in character. Joinder is favored for reasons of judicial economy.[13] The danger of prejudicial joinder, however, is greater with respect to charges that are similar in character than with other types of counts properly joined under Rule 8(a).[14]

The counts were tried together, over Pierce's timely protest. Having determined that the counts were properly joined under Rule 8(a), our inquiry now becomes whether the record in this case indicates a sufficient possibility of prejudice by reason of the joinder of count III for trial as to require reversal.

Several forms of prejudice have been recognized. In *Drew v. United States*,[15] the U.S. Court of Appeals for the District of Columbia Circuit recognized some circumstances in which a defendant may be prejudiced by joinder:

(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury

may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.

Pierce has not established that he was embarrassed or confounded in presenting separate defenses. He presents no argument on that issue. A verdict was directed in Pierce's favor on count III. The trial judge properly instructed the jury to use the evidence introduced under count III only for a permissible limited purpose. Additionally, counts I and II were proved by sufficient independent evidence. Thus, none of the circumstances delineated in *Drew*, in which a defendant may be prejudiced, has been established.[16]

While 2½ months elapsed between the alleged commission of the offenses in count III and the remaining counts, this, in itself is insufficient to show prejudice.[17]

In a separate trial on the misapplication charge, the prior loan to Pierce would be admissible to show a motive in that Pierce was not able to borrow those funds himself. Thus, the counts are similar in that much of the evidence and many of the witnesses are the same with respect to all

---

**12.** Rule 14 of the FED.R.CRIM.P. provides, in pertinent part:

"Rule 14. Relief From Prejudicial Joinder

"If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment * * * or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. * * *"

Pierce, in effect, challenges Judge Varner's denial of his pretrial motion for severance of count III.

**13.** 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 222 (1982).

**14.** 8 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 14.03[1] (2d ed. 1983).

**15.** *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir.1964).

**16.** *Drew,* 331 F.2d at 88–89; *United States v. Williamson,* 482 F.2d 508, 511–12 (5th Cir.1973); *United States v. Hatcher,* 423 F.2d 1086, 1089–90 (5th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 86 (1970).

**17.** *Hatcher,* 423 F.2d at 1089 (passage of 2½ years between alleged acts of counterfeiting held, in itself, insufficient to show prejudice).

three of the counts. Separate trials would not have resulted in segregation of the evidence as to each offense.[18]

On the basis of the record before us, we conclude that the joinder of count III did not have an effect to prejudice Pierce. Hence, Pierce is not entitled to a new trial on the basis of the alleged misjoinder.

### Approved Unfunded Loans

Pierce argues that the court below committed reversible error by allowing into evidence testimony and loan applications of credit union members whose loans had allegedly been approved but not funded. The joinder of count III, Pierce alleges, opened the door for the Government to introduce evidence on the allegedly irrelevant issue of depletion of credit union funds, leaving the jury with the impression that Pierce was guilty of some wrongdoing. Pierce contends that such evidence is irrelevant and is highly prejudicial. We disagree.

The evidence was admitted for the limited purpose of proving Pierce's intent to violate federal credit union regulations. Pierce had already borrowed to the available limits under his own name and the prosecution contended that he misapplied credit union funds (count III) in applying for and obtaining additional money under his wife's name. By borrowing under his wife's name, Pierce would be able to circumvent the individual limits and obtain monies that presumably would have been available to other approved borrowers.

■ The trial judge properly instructed the jury that it could consider this evidence only to prove Pierce's intent to misapply credit union funds. "A jury is presumed to follow jury instructions."[19] Because the court entered a judgment of acquittal on count III, we must presume that the jury did not consider this evidence in reaching its verdict of guilty on counts I and II. We hold that the district court did not abuse its discretion in allowing into evidence testimony and applications with respect to approved, but unfunded, applications.

### Approval of Other Applications With No Statement of Liabilities

Finally, Pierce contends that the court committed reversible error in refusing to allow cross-examination of Ora P. Williams concerning her approval of prior loan applications containing no statement of liabilities. Pierce argues that Ms. Williams did not consider liabilities with respect to applications for payroll deductible loans and, knowing this, Pierce had no intent to defraud in misstating his liabilities. Thus, Pierce alleges relevancy to intent and for impeachment purposes.[20]

The approval of other loan applications containing no statement of liabilities, however, does not establish that Pierce lacked the requisite intent. First, the statement of no liabilities in those applications may well have been accurate. Pierce offered no proof to the contrary and, even if false statements were made on those applications, the wrongdoing of other applicants will not exculpate Pierce.

Second, in arguing that a failure to influence establishes a lack of intent, Pierce misunderstands the term "for the purpose of influencing" under section 1014. "The question of intent is not whether the banks actually relied or were influenced by the false statements, but rather, if the statement was capable of influencing."[21] The extent of indebtedness is precisely the type of information that can be expected to influence a lender in determining whether to extend credit. The false information given the credit union by Pierce in the June 7 loan application was clearly "capable of influencing" action on Pierce's application.

---

18. *Williamson,* 482 F.2d at 511–12.

19. *Adams v. Wainwright,* 709 F.2d 1443, 1447 (11th Cir.1983); *see Grizzel v. Wainwright,* 692 F.2d 722, 726–27 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

20. Fed.R.Evid. 402.

21. *United States v. Scott,* 701 F.2d 1340, 1345 (11th Cir.1983). *Accord, United States v. Kelley,* 615 F.2d 378, 379–80 (5th Cir.1980); *United States v. Johnson,* 585 F.2d 119, 124–25 (5th Cir.1978).

Finally, if Pierce were convinced that his false statements would not be considered, he might just as likely be expected to tell the truth. Failure to consider liabilities does not make it more or less probable that Pierce lacked the requisite intent. Pierce has not established the relevancy of the testimony. Hence, Pierce has failed to establish that the trial judge abused his discretion in refusing to allow the cross-examination of Ms. Williams to proceed with respect to the approval of prior applications containing no statement of liabilities.

### Conclusion

In summary, while we hold that count I and count II are multiplicious, we reject the balance of Pierce's alleged errors. We hold that the district court erred in imposing separate sentences under counts I and II for the same offense. Accordingly, the district court is instructed to vacate the conviction and sentence with respect to either count I or count II, but not both. The case is remanded to the district court for resentencing under either count I or count II.

VACATED and REMANDED.