697 S.E.2d 71

**STATE of West Virginia, Appellee,**

v.

**Ray RASH, Appellant.**

**No. 34708.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 2010.

Decided June 7, 2010.

Alvin E. Gurganus, II, Esq., Williamson, Magann & Gurganus, Princeton, WV, for Appellant.

Deborah K. Garton, Esq., Assistant Prosecuting Attorney, Bluefield, WV, for Appellee.

PER CURIAM:

The Appellant, Ray Rash, appeals his convictions in the Circuit Court of Mercer County of one count of sexual abuse in the first degree, one count of sexual assault in the first degree, and one count of sexual abuse by a custodian. For the reasons that follow, we affirm the convictions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 13, 2005, Appellant was indicted on two counts of sexual abuse in the first

degree, three counts of sexual abuse by a custodian, and one count of sexual assault in the first degree following allegations that the Appellant had illegal sexual encounters with two minor females under the age of eleven years old. Counts One through Four, which included charges for sexual abuse in the first degree, sexual abuse by a custodian, sexual assault in the first degree and sexual abuse by a custodian, involved alleged incidents occurring between the Appellant and a minor child named E.C.H.[1] between November and December 1989. Counts Five and Six, sexual abuse in the first degree and sexual abuse by a custodian, involved alleged incidents between Appellant and a minor child named A.L. between November 2001 and February 2002.

On November 7, 2005, Appellant moved to sever Counts One through Four from Counts Five and Six on the basis that the first four counts involved incidents alleged to have occurred many years before those in the last two counts, and that the child involved in the first four counts was substantially older than the child involved in the last two counts.[2] Following that motion, the State filed a Notice of Intent to Move the Court for Admission of Rule 404(b) Evidence to introduce evidence of the inappropriate touching by Appellant of E.L., the sister of alleged victim A.L. referenced in Counts Five and Six. The State also filed a response to Appellant's motion to sever on January 17, 2006, asserting that introduction of 404(b) evidence concerning Appellant's inappropriate touching of E.L. was probative to show that the Appellant's repeated inappropriate touching was not a mistake or acts that were simply misconstrued by the victims.

The circuit court conducted a *McGinnis*[3] hearing on March 6, 2006. At the hearing, the circuit court heard testimony from the alleged victims E.C.H., A.L, and testimony from E.L., A.L.'s sister.[4] At the conclusion

---

1. Consistent with our practice in cases involving sensitive matters, we use the victims' initials. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Although E.C.H. made allegations of abuse in 1990, the State did not charge the Appellant at that time because it did not believe there was

sufficient evidence at that juncture to proceed with a case.

3. A more thorough discussion of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) is contained below.

4. E.C.H., who was twenty-six at the time of the hearing, testified that she had been abused by the

of said testimony, the State argued that the testimony was being offered as 404(b) evidence "for the absence of mistake or inadvertence, ... lustful disposition for children, common mode, plan, scheme or design." In analyzing the evidence, the circuit court explained that it was necessary to examine Rule 404(b) because if the evidence was admissible under Rule 404(b), the counts should not be severed. In conducting said analysis, the circuit court noted that the following similarities in the testimony of E.C.H., A.L. and E.L:

a) Certain physical characteristics/resemblance;

b) At the time of the alleged offenses, all were prepubescent females;

c) The defendant's girlfriend (A.L. and E.L.'s grandmother) was always absent;

d) In the charged counts, the victims were sleeping or feigning sleep;

e) On two occasions the defendant told E.C.H. and E.L. not to tell; and

f) The circumstances of the touchings belie a mistake.

As required under *McGinnis*, the circuit court found that the acts to which E.L. testified occurred and that the Appellant committed said acts. The court found this evidence to be relevant. It then balanced the probative value of the evidence against its prejudicial effect, and found that E.L.'s testimony should be permitted, with a cautionary instruction given to the jury at the time of trial.

After continuing the trial on four separate occasions at the Appellant's request, Appellant pled guilty to two counts of sexual abuse in the first degree (Counts One and Five) and two counts of sexual abuse by a custodian (Counts Two and Six) on December 12, 2006. As part of that plea agreement, the State agreed to dismiss the remaining counts. The court accepted the plea on December 14, 2006. However, on February 26, 2007, Appellant withdrew his guilty plea. The matter went to trial on April 3, 2007. On the second day of deliberations, the jury advised the court that it was unable to reach a verdict. The court gave an *Allen* instruction, and the jury continued its deliberations. The jury again advised the court that it was unable to reach a verdict, and a mistrial was declared on April 5, 2007.

A second trial was held on May 29 and 30, 2007. At the time of trial, Appellant filed and argued a motion in *limine* to prevent E.C.H. from testifying that she was treated for several years at Southern Highlands for sexual abuse because the Appellant had not been provided treatment records from Southern Highlands and allowing such evidence would violate his due process rights and his sixth amendment rights to confront his accusers and effectively cross-examine the witnesses against him. Appellant had previously asked for the treatment records in discovery and only received three pages of records which did not contain any treatment notes. The circuit court denied Appellant's motion, permitting E.C.H. to offer testimony at trial regarding the treatment she received at Southern Highlands. E.C.H., A.L. and

Appellant on two different occasions in 1989. E.C.H. testified that on each occasion, she was spending the night with her best friend, T.R., Appellant's daughter, at their house. On the first alleged occasion, E.C.H. was sleeping in the same bed as T.R. and was awakened when the Appellant came into the room and touched her in her pubic area. On the second occasion, Appellant came into the bedroom where the girls were sleeping and told T.R. to go to he and his girlfriend's bedroom because the girls were awake playing dolls and making noise. The Appellant then left the house to take his girlfriend to work, and E.C.H. fell asleep alone in T.R.'s bed. E.C.H. was awakened by Appellant returning to T.R.'s room, where he allegedly inserted his finger into her vagina. E.C.H. did not report the abuse until 1990, when her sisters made allega-

tions that they were molested by another individual.

The next person to testify was E.L. She testified that on one occasion, Appellant touched her on her upper thigh and on a separate occasion rubbed her backside. Appellant was not charged for either alleged event.

E.L.'s sister, A.L, also testified. She testified that she was touched in her pubic area once when she was laying on the couch with the Appellant sitting at the other end of the couch. This allegedly occurred between November 2001 and February 2002, some eleven years after the abuse to E.C.H. occurred. A.L. and E.L. informed their grandmother, Appellant's girlfriend, of this alleged event. They confronted the Appellant and he denied the allegation.

A.L.'s sister provided testimony at trial.[5] Following their testimony, the circuit court gave an instruction regarding 404(b) evidence, stating that "[s]uch evidence was admitted and should be considered by you only so far as in your opinion it may go to show the absence of mistake or inadvertence, common scheme, plans and design, and the lustful disposition of the defendant."

Following the presentation of the defendant's case, the State moved to dismiss Count Two and the circuit court granted this motion. The jury then found the Appellant guilty of Counts One, Three and Four. Appellant was found not guilty of Counts Five and Six. On June 21, 2007, the Appellant moved for a new trial, but that motion was denied by the circuit court. Thereafter, on August 13, 2007, Appellant was sentenced to one to five years for Count One, fifteen to thirty-five years for Count Three, and ten to twenty years for Count Four. The sentences were set to run consecutively. However, the circuit court suspended the sentences for Counts One and Three and ordered that when the Appellant discharged his sentence under Count Four, he be placed on probation for fifty years. On November 5, 2007, Appellant moved for reconsideration of that sentence. Appellant's motion was denied. It is from that order that Appellant now appeals.

## II.

### STANDARD OF REVIEW

■ This Court has held that "[e]ven where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va. R.Crim.P. 14(a) is a matter within the sound discretion of the trial court. Syl. Pt. 3, *State v. Hatfield,* 181 W.Va. 106, 380 S.E.2d 670 (1988)." Syl. Pt. 1, *State v. Ludwick,* 197 W.Va. 70, 475 S.E.2d 70 (1996). Such a

ruling will not be reversed unless it appears that the circuit court's exercise of its discretion was clearly wrong. *Id.*

With respect to the admission of 404(b) evidence, we have delineated the following standard of review:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. McIntosh,* 207 W.Va. 561, 568–69, 534 S.E.2d 757, 764–65 (2000)(*quoting State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996)).

This Court has specified that a circuit court abuses its discretion in admitting 404(b) evidence only where the court acts in an "arbitrary and irrational" manner. *State v. McGinnis,* 193 W.Va. at 159, 455 S.E.2d at 528. We specified as follows:

> Our function on this appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*Id.*

■ In *State v. LaRock,* we noted that "[t]he balancing of probative value against unfair prejudice is weighed in favor of admissibility and rulings thereon are reviewed only for an abuse of discretion." 196 W.Va. at 312, 470 S.E.2d at 631. This Court "applies a reasonableness standard and examines the

---

5. The testimony provided by E.C.H., A.L. and E.L. at trial was largely similar to that provided at the March 6, 2006 hearing. In addition, E.C.H. provided testimony regarding the alleged effects of the abuse. E.C.H. testified that prior to

the offenses, she was an honor roll student. Following the abuse, she failed sixth grade. She never graduated high school, but received her GED. She later attended Bluefield State College where she earned a 3.5 GPA.

facts and circumstances of each case." *Id.* Further, this Court "reviews disputed evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effects." *Id.*

### III.

### DISCUSSION

■ As an initial matter, we pause to note various inconsistencies between the assignments of error initially presented by the Appellant in his Petition for Appeal and those assignments of error raised in his appellate brief. The Appellant's appellate brief lists seven assignments of error.[6] However, the third, fifth, sixth and seventh assignments of error were not presented in the Appellant's Petition for Appeal. These issues were raised for the first time in the Appellant's brief. To the extent that the Appellant failed to raise the third, fifth, and sixth assignments of error (delay in the pre-indictment allegations, irrelevancy of E.C.H.'s testimony regarding effects of sexual abuse, and confrontation clause violation due to E.C.H.'s treatment records not being produced) in his Petition for Appeal, these argument are deemed waived, and will not be considered in this appeal. *See Koerner v. West Virginia Dep't of Military Affairs & Pub. Safety,* 217 W.Va. 231, 617 S.E.2d 778 (2005)(refusing to consider an argument in Appellant's brief that was not assigned as error in petition for appeal); *Holmes v. Basham,* 130 W.Va. 743, 45 S.E.2d 252 (1947)(same). Although assignment of error seven, the plain error rule, was likewise not raised in the Petition for Appeal, this Court has held that we may, in the interest of justice, consider this issue *sua sponte. See* Syl. Pt. 1, *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998)("This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, *sua sponte,* in the interest of justice, notice plain error.") That aside, we proceed forward to consider the merits of those assignments of error that were properly presented, that being assignments of error one, two and four. We will also consider, *sua sponte,* assignment of error seven.

### A.

### *Motion for Severance*

■ The circuit court denied the Appellant's motion to sever the charges in this case, and all were tried together before a jury. The Appellant was found guilty on Counts One (sexual abuse of E.C.H.—first degree), Three (sexual assault of E.C.H.—first degree), and Four (sexual abuse of E.C.H. by a custodian) at the conclusion of trial. He was found not guilty of Counts Five (sexual abuse of A.L.—first degree) and Six (sexual abuse of A.L. by a custodian) of the indictment. Count Two was dismissed during trial.

On appeal, the Appellant claims that the circuit court erred in denying his motion to sever and in trying the counts jointly. Specifically, the Appellant asserts that the circuit court erred in denying his motion to sever the trials for charges brought by E.C.H. from the charges brought by A.L. because the crimes were separated by more than eleven years, and thus, there is no evidence

---

**6.** He contends that the trial court erred: (1) in denying Appellant's motion to sever the trials for charges brought by E.C.H. and from the charges brought by A.L.; (2) in allowing the Appellee to present 404(b) evidence at the trial of this case; (3) by allowing Appellee to violate Appellant's Due Process rights found in the Fifth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution by substantially delaying the pre-indictment allegations made by E.C.H. concerning illegal sexual activities which allegedly occurred in 1989; (4) in allowing the Appellee to present evidence that E.C.H. was treated for sexual abuse at Southern Highlands based on allegations she made against Appellant because the Appellee did not present any expert to testify to the alleged treatment, the Appellee did not provide Appellant with any treatment records from Southern Highlands and Appellant could not find the records violating Appellant's Sixth Amendment Constitutional rights to confront his accusers and cross-examine witnesses; (5) in not striking the testimony of E.C.H. concerning the effects of the alleged encounters with the Appellant because this testimony was irrelevant; (6) in not striking the testimony of E.C.H. concerning the effects of the alleged encounters with the Appellant because this violates Appellant's Sixth Amendment Constitutional rights to confront his accusers and cross-examine witnesses; and (7) pursuant to the plain error doctrine.

of a common scheme or plan. Additionally, Appellant contends that the only purpose for bringing the separate charges in one indictment and one trial was to create an emotional impact on the jury and unduly influence it into convicting the Appellant. Moreover, the Appellant argues that even if joinder of the offenses is proper, the trial court should have ordered severance because joinder was unduly prejudicial. Appellant alleges that the circuit court erred when it permitted the State to introduce 404(b) evidence for a litany of purposes including "absence of mistake or inadvertence, ... lustful disposition for children, common mode, plan, scheme or design", instead of stating one specific purpose, and thus, the jury was allowed to guess the purpose of offering such evidence and consider it in any manner it decided.

Appellant contends that at the trial, there was no issue of mistake or inadvertence, and thus, this was not an appropriate purpose for the admission of such evidence. Additionally, Appellant alleges that opportunity was not an issue at trial, as he never contended that he did not have an opportunity to perform the alleged criminal acts. He also contends that in order for the 404(b) evidence to be admissible for the purpose of showing common mode, scheme, or plan, there must be no variance as to the time and manner of the acts committed, as required by *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

Conversely, the State contends that the offenses were so similar in nature that the evidence of one would have been admissible at a separate trial for the other under Rule 404(b) of the West Virginia Rules of Evidence. The State asserts that the circuit court properly conducted a *McGinnis* analysis to determine if the 404(b) evidence was admissible and found that there were many similarities between the victims and the manner in which the abuse occurred. Thus, the circuit court admitted the testimony for the specific reasons of "absence of mistake, opportunity, intent and lustful disposition." The State alleges that the circuit court was not limited to identifying just one purpose for the admission of such evidence. The State also asserts that the Appellant fails to present a cogent argument as to the mechanics of

the prejudice that he claims to have suffered, other than pointing to a guilty verdict. The State contends that it is not the number of years between the crimes that matters, but rather whether the victims would have been permitted to testify at separate trials as 404(b) witnesses.

Rule 8(a) of the *West Virginia Rules of Civil Procedure* provides:

(1) *Permissive Joinder.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character.

(2) *Mandatory Joinder.* If two or more offenses are known or should have been known by the exercise of due diligence to the attorney for the state at the time of the commencement of the prosecution and were committed within the same county having jurisdiction and venue of the offenses, all such offenses upon which the attorney for the state elects to proceed shall be prosecuted by separate counts in a single prosecution if they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, whether felonies or misdemeanors or both. Any offense required by this rule to be prosecuted by a separate count in a single prosecution cannot be subsequently prosecuted unless waived by the defendant.

In *State v. Cunningham*, 170 W.Va. 119, 290 S.E.2d 256 (1981), this Court held that:

A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.

170 W.Va. at 122, 290 S.E.2d at 259.

For purposes of determining whether joinder of charges is appropriate, this Court has also recognized that a number of jurisdictions have held that the offenses need not

be related to each other to be "of the same or similar character" within the meaning of our Rules. *State v. Hatfield,* 181 W.Va. at 109, 380 S.E.2d at 673. "Rule 8(a) permits joinder against one defendant of offenses 'of the same or similar character', even where those offenses arise out of wholly separate, unconnected transactions ..." *Id.* (*citing United States v. Satterfield,* 548 F.2d 1341, 1344 (9th Cir.1977), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978), *citing United States v. Roselli,* 432 F.2d 879, 898 (9th Cir.1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971)). Neither must the offenses be identical in nature. *Id.* In *Hatfield,* this Court stated that

> Rule 8(a) is not limited to crimes of the "same" character but also covers those of "similar" character, which means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." Webster's New International Dictionary (2d ed.). As one court pointed out, requiring too precise an identity between the character of the offenses "would fail to give effect to the word 'similar' succeeding the word 'same' and thus violate an elementary rule of statutory construction." *Edwards v. Squier,* 178 F.2d 758, 759 (9th Cir.1949)
>
> . . .
>
> Mere lapse of time between the commission of the offenses does not render joinder improper. *United States v. Franklin,* 452 F.2d 926 (8th Cir.1971). *See also United States v. Pierce,* 733 F.2d 1474 (11th Cir.1984); *United States v. Rogers* [*Rodgers*] 732 F.2d 625 (8th Cir.1984); *United States v. Hatcher,* 423 F.2d 1086 (5th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 86 (1970); 8 J. Moore, *Moore's Federal Practice* 8.05[4] (2d ed. 1985).
>
> On the other hand, the reason for allowing joinder or consolidation of offenses, namely the promotion of judicial economy by avoidance of needless multiple trials, is not as compelling where the offenses are similar but unrelated.

*Id.* Courts interpreting the equivalent provision of the Federal Rules of Criminal Procedure have held that Rule 8(a) is to be liberally construed in favor of joinder. *Id.* (*citing United States v. Montes–Cardenas,* 746 F.2d 771 (11th Cir.1984)(other internal citations omitted)). Furthermore, we have repeatedly recognized that joinder of offenses promotes judicial efficiency and economy by avoiding needless multiple trials. *Id.* at 110, 380 S.E.2d at 674.

Admittedly, the present case involves offenses separated by a considerable length of time. However, we find that the offenses charged against the Appellant were properly joined because there were "of the same or similar character." The charges herein are similar statutory offenses, as they all involve inappropriate sexual contact with a minor. Additionally, there are commonalities between the Appellant's offenses against E.C.H. and A.L. that support joinder. The alleged victims were both young prepubescent females who were relatives of the Appellant, the Appellant used his position of trust as a family member to take advantage of both victims, and hand-to-genital contact was engaged in with respect to both victims. Additionally, the two cases could also be "connected together or constitute parts of a common scheme or plan." W. Va. R.Crim.P. 8. The allegations are susceptible to the analysis that defendant's common scheme or plan was to arouse or gratify his sexual desires through the exploitation of young children.

While we recognize that the offenses were separated by eleven years, when we assess the circumstances of the instant case and balance all of the relevant factors, we believe that the similarities outweigh the temporal remoteness of the offenses. Other jurisdictions have made similar holdings. *See State v. Pereira,* 973 A.2d 19 (R.I.2009)(holding that charges alleging sexual offenses by defendant against his daughter and niece, arising out of separate incidents occurring some sixteen to twenty-one years apart were of sufficiently similar character to be tried together); *State v. Barnes,* 149 Ohio Misc.2d 1, 896 N.E.2d 1033 (Ohio Com.Pl.2008)(holding joinder proper where sexual offenses against separate victims occurred seven to nine years apart because they constituted a common scheme or plan for the purposes of sexual gratification); *State v. Reeder,* 182 S.W.3d

569 (Mo.App. E.D.2005)(joinder was proper because sexual offenses against separate victims two years apart were similar in character); *State v. Daniel R.F.*, 246 Wis.2d 990, 632 N.W.2d 124 (Wis.App.2001)(unpublished)(holding that sexual offenses against separate victims four years apart were similar in character and joinder was proper). Accordingly, we find that joinder was appropriate.

■ The Appellant also contends that even if joinder of the offenses was proper, the trial court abused its discretion in denying his motion for severance under Rule 14 of the West Virginia Rules of Criminal Procedure because the only purpose for bringing the separate charges in one indictment and one trial was to create an emotional impact on the jury and unduly influence it into convicting the Appellant. Moreover, the Appellant argues that the trial court should have ordered severance because joinder was unduly prejudicial. He asserts that here, the joinder of charges was substantially prejudicial because the jury was allowed to guess the purpose of offering such evidence and consider it in any manner it decided because the State never provided an explicit purpose for the offering of the 404(b) evidence.

■ Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. Syl. Pt. 3, in part, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988). Rule 14(a) of the West Virginia Rules of Criminal Procedure provides, in relevant part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendant or other relevant information which

the state intends to introduce in evidence at the trial.

The decision to grant a motion for severance pursuant to W.Va.R.Crim.P. 14(a) is a matter within the sound discretion of the trial court. Syl. Pt. 3, 181 W.Va. 106, 380 S.E.2d 670. Such a ruling will not be reversed unless it appears that the circuit court's exercise of its discretion was clearly wrong. *Id.*

In exploring the various reasons that a motion for severance may be appropriate, this Court has stated:

> Rule 14 of the West Virginia Rules of Criminal Procedure is modeled on Rule 14 of the Federal Rules of Criminal Procedure, and under Federal law it appears that it is incumbent upon a trial judge to consider in some depth a motion to grant a severance if: (a) a joint trial will raise so many issues that a jury may conclude that the defendant is a "bad man" and must have done something, and consequently will convict him as a "bad man" rather than on a particular charge; (b) if one offense may be used to convict him of another, though proof of that guilt would have been inadmissible at a separate trial; and (c) the defendant may wish to testify in his own defense on one charge but not on another. *See* 1A C.A. Wright & A. Leipold, Federal Practice and Procedure: Criminal 2d § 222 (1982).

*State v. Ludwick*, 197 W.Va. at 73, 475 S.E.2d at 73.

Herein, the Appellant essentially argues that the first two types of prejudice discussed in *Ludwick* occurred in his case. We disagree. Upon review of the record, we find that the circuit court thoroughly considered the Appellant's arguments, but concluded that even if the charges were severed, it was likely that the evidence relating to each of the sexual offenses charged would be admissible in a separate trial for the other. Specifically, the circuit court reasoned that if the testimony of E.C.H. was admissible at trial where A.L. was the victim or the testimony of A.L. was admissible at the trial where E.C.H. was the victim, severance would not be appropriate.

In *State v. Penwell*, 199 W.Va. 111, 483 S.E.2d 240 (1996), this Court determined that

the defendant was not entitled to severance of charges for aggravated robbery and assault from his other charges of obstructing a police officer and unauthorized taking of a police vehicle. We stated that:

> In reviewing federal authority relating to severance of multiple counts, this Court notes that it is widely recognized that prejudice is not present under the "other crimes" rule if evidence of each of the crimes charged would be admissible in a separate trial for the other. *See* C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).

199 W.Va. at 118, 483 S.E.2d at 247.

In other words, if evidence of each of the offenses charged would be admissible under Rule 404(b) of the West Virginia Rules of Criminal Procedure in a separate trial for the other, then severance is appropriate under the "other crimes" rule. Rule 404(b) of the West Virginia Rules of Evidence provides, in pertinent part:

> Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

 In addition to the purposes outlined in Rule 404(b) for the admission of such evidence, our common law also provides that lustful disposition for children can be a reason for admission of 404(b) evidence provided that such evidence relates to incidents reasonably close in time to the incidents giving rise to the indictment. *State v. Parsons*, 214 W.Va. 342, 589 S.E.2d 226 (2003); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). "Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition toward children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment ..." Syl. Pt. 2, in part, *State v.*

*Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

More recently, this Court has recognized that the probative value of other bad act evidence is not completely nullified by the fact that various sexual assaults occurred remote in time from one another. In *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000), this Court held that evidence of prior sexual incidents involving a defendant teacher and his female students was admissible, although the sexual assaults occurred within four, seven and thirteen years of each other. In coming to this conclusion in *McIntosh*, we recognized that "the decision on remoteness as precluding the admissibility of evidence is generally for the trial court to determine in the exercise of its sound discretion." *Id.* (*quoting State v. Gwinn*, 169 W.Va. 456, 472, 288 S.E.2d 533, 542 (1982)). We also relied upon our prior holding in *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945), wherein we stated:

> An abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material.

*Id.* at 311–12, 36 S.E.2d at 416.

 It is well understood that "[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." *State v. Gwinn*, 169 W.Va. at 457, 288 S.E.2d at 535. "The admissibility of evidence concerning prior bad acts under rule 404(2) must be determined upon the facts of each case; no exact limitation of time can be fixed as to when prior acts are too remote to be admissible." *McIntosh*, 207 W.Va. at 572, 534 S.E.2d at 768 (*quoting State v. Burdette*, 259 Neb. 679, 697, 611 N.W.2d 615 (2000)). Furthermore, "[w]hile remoteness in time may weaken the probative value of evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence." *Id.*

at 573, 534 S.E.2d at 769. Several courts have made similar holdings.[7]

Herein, the circuit court heard testimony from each of the alleged victims. The circuit court noted many striking similarities between the two offenses, including the physical characteristics of the victims, their age at the time of the offenses, the fact that the Appellant's girlfriend was absent and the girls were sleeping or feigning sleep when the alleged abuse occurred. The circuit court determined that the testimony presented would show an absence of mistake, and their testimony would have been admissible in separate trials if the counts were severed. Based upon these similarities between the two offenses, the circuit court, in its sound discretion, found that evidence of such offenses were mutually admissible in each case.

Furthermore, we recognize the possibility that a jury could become inflamed by the misuse of evidence to infer a criminal disposition, particularly in a trial involving allegations of sexual misconduct. However, here, the jury acquitted the Appellant of all of the charges involving A.L., only finding the Appellant guilty of the charges involving E.C.H. When we consider the Appellant's acquittal of charges on Counts Five and Six, coupled with the circuit court's analysis of the evidence and its instructions to the jury, we see no reason to believe that the jury inappropriately cumulated any evidence or that the Appellant was unfairly prejudiced by inferring that he had a criminal disposition from which it assumed his guilt. In the circumstances of the case before us, the Appellant has not demonstrated that he has suffered any prejudice that would outweigh this Court's consideration of the circuit court's legitimate concerns for judicial economy. Accordingly, the circuit court properly denied the Appellant's motion for severance.

### B.

### Admission of 404(b) Evidence

▇▇▇▇ Next, Appellant assigns error to the circuit court's admission of the testimony of E.L., A.L.'s sister, as 404(b) evidence in this case. With respect to the admission of 404(b) evidence, this Court has held that:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct occurred and that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is

---

7. *See State v. Schaaf,* 234 Neb. 144, 449 N.W.2d 762, 772 (1989)(finding that remoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence under Rule 404(2) and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong or act irrelevant and inadmissible.); *see also Cooper v. State,* 173 Ga.App. 254, 325 S.E.2d 877 (1985)(court admitted testimony of the defendant's adult daughters regarding acts committed by the defendant against them nineteen years prior to the prosecution of the defendant for incest involving the defendant's granddaughters.); *State v. Maestas,* 224 N.W.2d 248 (Iowa 1974)(permitting testimony of an older daughter concerning acts committed by her fa-

ther against her six to ten years prior to the prosecution of the defendant for sexual offenses involving a younger daughter); *Britton v. State,* 845 P.2d 1374 (Wyo.1992)(holding that the test for remoteness cannot be a mechanical process based only on the amount of time that elapsed between the prior act and the present offense . . . Questions concerning remoteness of evidence are left to the sound discretion of the trial court and are subject to challenge only for clear abuse of discretion.); *United States v. Foley,* 683 F.2d 273, 278 (8th Cir.1982) *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982)(finding eleven years acceptable in determining whether evidence is too remote, the court should apply a reasonableness standard).

then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

In evaluating the specific purposes for which Rule 404(b) evidence is admissible, this Court has stated that Rule 404(b)'s list of "other purposes" is illustrative only, and "the exceptions to the admission of collateral crimes listed in the rule are not meant to be exhaustive." *State v. Dolin*, 176 W.Va. at 692, 347 S.E.2d at 213. We do not interpret Rule 404(b) as requiring the prosecution to force the evidence into a predetermined compartment, but only to show a relevant purpose other than proving conduct by means of the general propensity inference ("he stole in the past, so he probably stole on this occasion"). On the other hand,

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syl. Pt. 1, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

At the hearing on the State's motion to introduce 404(b) evidence of the Appellant's inappropriate touching of E.L., the State argued that the testimony was being offered as 404(b) evidence "for the absence of mistake or inadvertence, ... lustful disposition for children, common mode, plan, scheme or design." After hearing the testimony of E.L., the circuit court evaluated the evidence and analyzed the similarities between the accounts given by E.L. and those of E.C.H. and A.L. The court took notice that all thee female victims were physically similar having dark blonde hair, noting in particular that E.L. and E.C.H. looked so much alike that they could be sisters. E.L. alleged that she was inappropriately touched by the Appellant on her buttox and thigh in 2001, when she was also a prepubescent female around eight years of age. The alleged events involving E.L. also occurred at a time when her grandmother, the Appellant's wife, was not present, and as in E.C.H.'s case, the Appellant told E.L. not to tell anyone. The court likewise noted that the alleged offenses with both E.L. and E.C.H. occurred more than once, indicating the lack of a mistake. Based upon the evidence presented, the circuit court found that E.L.'s testimony would be relevant under Rule 404(b) for the purposes of showing "absence of mistake, opportunity, intent, lustful disposition." The circuit court then conducted a *McGinnis* analysis and found that the acts to which E.L. testified occurred and that the Appellant committed said acts. The court then balanced the probative value of the evidence against its prejudicial effect, and found that E.L.'s testimony should be permitted, with a cautionary instruction given to the jury at the time of trial.

Having reviewed the record before us, we conclude that it was appropriate to admit E.L.'s testimony as 404(b) evidence. While the Appellant's touching of E.L. may not have risen to the level of a crime, it was certainly an inappropriate, wrongful act which was admissible under Rule 404(b) of the West Virginia Rules of Evidence. The circuit court heard the victims' testimony and weighed the evidence as required under *McGinnis*, 193 W.Va. 147, 455 S.E.2d 516, and appropriately determined that such evidence would be admissible for the purposes of proving "absence of mistake, opportunity, intent, [and] lustful disposition." While we acknowledge that pursuant to our previous holding in *McGinnis* it is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b), nothing in our law

prevents a circuit court from identifying more than one specific purpose for which such evidence is offered. Provided that the specific and precise purpose for which the evidence is offered is clearly shown from the record, and that purpose is explained to the jury in the trial court's instruction, as it was here, there is no error in the circuit court finding that the evidence presented is admissible for more than one valid reason.

■ It has continually been recognized that this Court allocates significant discretion to the circuit court in making evidentiary rulings of this nature. Indeed, "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds, State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994). "The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admissibility of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Based upon the foregoing, we cannot conclude that the circuit court abused its discretion in admitting the 404(b) evidence at issue in this case.

### C.

### *Evidence of Treatment at Southern Highlands*

■ Next, Appellant contends that the circuit court erred in allowing the Appellee to present evidence that E.C.H. was treated for sexual abuse at Southern Highlands based on allegations she made against the Appellant because the State did not present any expert to testify to the alleged treatment, the State did not provide Appellant with any treatment records from Southern Highlands and Appellant could not find any additional records from Southern Highlands violating his consti-

tutional rights to confront his accusers and cross-examine witnesses.

Specifically, Appellant alleges that the Appellant tried to obtain the treatment records for E.C.H. but was told the records were not available. Appellant was eventually provided three pages of records from Southern Highlands provided by E.C.H. herself. These records did not contain treatment notes or any substantive information regarding the treatment E.C.H. received. The three pages that were produced merely indicated that E.C.H.'s treatment was terminated because she failed to keep her appointments. Appellant filed a Motion in *Limine* to prevent the introduction of this evidence at trial. The circuit court denied this motion. Additionally, the Appellant objected to E.C.H.'s testimony concerning her treatments before she testified at trial. The Court overruled the objection and ordered the Appellant's attorney to use the three pages obtained from Southern Highlands in cross-examination.

Appellant submits that without the benefit of the treatment records, his counsel had no opportunity to meaningfully cross-examine E.C.H. because the only evidence the jury heard concerning alleged treatments for sex abuse came from E.C.H. herself. The Appellant contends that he was placed in a very difficult position and was substantially prejudiced by allowing the jury to only hear E.C.H.'s testimony because of her obvious bias against the Appellant. He also asserts that he had to limit his cross-examination of E.C.H. because he had no knowledge of the treatments she received, specifically whether the treatments were actually for sex abuse or some other psychological problems she was experiencing at that time. Furthermore, the Appellant argues that the circuit court did not make the State prove that the testimony was so trustworthy that adversarial testing would add little to its reliability. He submits that the treatment records would have allowed him to perform a more meaningful cross-examination and promote his theory of the case—that being that E.C.H. made up the allegations against the Appellant because her two sisters were getting all the attention when they accused someone else of abusing them. Additionally, Appellant contends that

the State did not present an expert with regards to the alleged treatment and thus, E.C.H. should not have been permitted to testify about the treatment because her psychological problem was not an obvious medical problem.

Conversely, the State asserts that the circuit court properly found that this was an issue of credibility, and that E.C.H. should not be restricted in her testimony. Subpoenas had been issued for the records from Southern Highlands, but there were no records available. The three pages that were found by E.C.H. were submitted to the court and marked as an exhibit. The State contends that even if there are no treatment notes, a witness is allowed to testify that she obtained treatment at some facility, whether a hospital, counseling agency, or the like. Although the Appellant intended to attack E.C.H.'s credibility for this very reason, E.C.H. was able to locate a few documents to confirm that she did in fact receive treatment. The State believes that the lack of treatment notes did not limit the Appellant's cross-examination of E.C.H. If anything, the State contends that the Appellant could have broadened his cross-examination because of the fact that there were no treatment notes. The State also asserts that the Appellant's argument that an expert was needed to present evidence of treatment is baseless.

In assessing the arguments presented by the parties, we agree with the contentions of the State and find that the testimony from E.C.H. regarding the treatment she received from Southern Highlands was admissible despite the fact that treatment notes were not submitted. The record reveals that the treatment notes were no longer in existence, at no fault of the alleged victim or the State. The State sought to introduce this direct testimony as proof of the mental effect that the Appellant's alleged sexual abuse had on E.C.H. The circuit court properly found that this was an issue of credibility, not admissibility. Furthermore, the testimony was not admitted for the purpose of demonstrating monetary or medical damages, purposes for which an expert witness might have been required. There was nothing preventing E.C.H. from providing a direct account of the effect that the sexual abuse had on her mentally. Thus, we cannot state that the circuit court abused its discretion in allowing the admission of such testimony.

### D.

### *Plain Error*

Finally, Appellant asserts that this Court should reverse his convictions based upon the principle of plain error. Under the plain error rule, the failure to meet the requirements of Rule 103(a) of the West Virginia Rules of Evidence and Rule 52(b) of the West Virginia Rules of Criminal Procedure may not be a forfeiture on appeal where the error is obvious or involves substantial and fundamental rights. *State v. Wilson,* 190 W.Va. 583, 439 S.E.2d 448 (1993). Plain error is usually defined as error that is so obvious that failure to notice it would seriously affect the fairness, integrity, or public reputation of the judicial proceedings and result in a miscarriage of justice. *U.S. v. Lewis,* 10 F.3d 1086 (4th Cir.1993). In West Virginia, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

In presenting this assignment of error herein, the Appellant, in a summary fashion, refers generally to the several errors he has assigned with regard to trial in this matter, stating that the same substantially affected his constitutional rights and clearly tainted the jury verdict. However, the Appellant does not identify any specific instances of plain error, indicating where certain errors occurred but appropriate objections were not maintained. Accordingly, because the Appellant fails to clearly identify such error, and based upon our own review of the record before us we are unable to conclude that any obvious error occurred at the trial in this matter violating the Appellant's substantial and fundamental rights under the plain error doctrine, we find no merit in this assignment of error and summarily reject the same.

## IV.

## CONCLUSION

For the reasons stated above, we conclude that the circuit court has not committed reversible error in this case. Accordingly, we affirm the Appellant's convictions.

**Affirmed.**

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

The trial court allowed the joinder of two alleged illegal sexual encounters that occurred 11 years apart. The trial court found that these alleged illegal sexual acts, involving different accusers, were of "similar character" and that joinder was permissible under Rule 8(a) of the *West Virginia Rules of Criminal Procedure.*

The purpose of Rule 8(a) is to promote judicial efficiency and to avoid costly and duplicative trials. However, the rule is not completely elastic. It may not be stretched so far that it prejudices a defendant's right to a fair trial. In other words, a jury should not convict a defendant because he is a bad person after hearing evidence of alleged offenses that occurred years apart with no overlapping evidence. It is generally recognized that under Rule 8(a)'s "same or similar character" joinder standard that joinder is permitted when two counts refer to the same type of offense occurring over a relatively short period of time and the evidence as to each count overlaps. *See* 9 Fed.Proc., L.Ed. § 22:1051.

In the case *sub judice,* the prejudice to the defendant is demonstrated by the jury finding that he did not commit the alleged sexual acts occurring between November 2001 and February 2002. Nevertheless, the alleged victim told the jury about these terrible acts that occurred during this time period. The jury heard this evidence about a "bad man" and were allowed to consider it in deciding that the defendant was guilty of acts that occurred 11 years earlier in 1989.

Prosecutors should be required to prosecute a defendant for crimes committed but not allowed to throw in "kitchen sink" charges which are not temporally related in order to show bad character. I submit that we (judges) have become blind to the probability that a jury will become hostile and misuse evidence to convict based on bad character evidence, particularly in a trial involving sexual misconduct. The defendant should be allowed to defend against an accuser's accusations and not be required to defend against ancient history.

For the foregoing reasons, I respectfully dissent.