# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0010** (Upshur County 14-F-92)

**Ronnie Junior Landis,**
**Defendant Below, Petitioner**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ronnie Junior Landis, by counsel James E. Hawkins, Jr. and Thomas J. Prall, appeals the Circuit Court of Upshur County's Amended Sentencing Order entered on November 29, 2015. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

Following a jury trial in February of 2015, petitioner was convicted of driving under the influence of alcohol ("DUI") causing death, a misdemeanor; negligent homicide, a misdemeanor; leaving the scene of an accident involving death or personal injury, a felony; and third offense driving while license revoked for DUI, a felony. By an amended sentencing order entered on November 29, 2015, the circuit court sentenced petitioner to serve an aggregate term of 2 to 8 years of incarceration, after being credited for time served; to pay a fine in the amount of $3,500; and to pay costs in the amount of $500.

The evidence at trial revealed that on October 5, 2013, petitioner was driving his truck on State Route 151 in Upshur County, West Virginia, with Nicole Currence[1] in the passenger seat. Petitioner came upon a sharp turn, over-corrected his truck, skidded up an embankment, and slammed into a tree. The accident caused extensive damage to the top and passenger side of the cab of the truck. Ms. Currence died as a result of the accident.

---

[1] Ms. Currence is also referred to in the record as Nicole Rogozinski.

1

A witness came upon the accident and called 911. This witness observed that petitioner was standing by the driver's side door of the truck and was staggering from side to side. This witness also testified that petitioner gave her his name while she was calling 911, but that he left the scene on foot before authorities arrived.

West Virginia State Police Trooper Devin James Lowry testified that he arrived at the crash scene at approximately 8:15 p.m., and allowed an emergency medical services crew to attend to Ms. Currence while he looked for petitioner. Trooper Lowry located petitioner walking down the road, away from the scene. Petitioner became combative and attempted to walk away when Trooper Lowry asked him questions about the accident. According to Trooper Lowry, petitioner acted erratically, smelled of alcohol, had bloodshot and glassy eyes, and had a wobbly gait. Because of petitioner's combative behavior, Trooper Lowry did not administer field sobriety tests at the scene.

Petitioner gave a statement to Trooper Lowry and claimed that Ms. Currence was driving the truck at the time of the accident. However, Trooper Lowry testified that Ms. Currence was not positioned in the truck to where she could have been driving; her legs were on the passenger side and the passenger side door and roof was completely smashed in and unable to be opened. According to Trooper Lowry, petitioner admitted that he had been drinking all day. Trooper Lowry also observed that petitioner was wearing a home confinement anklet.[2]

Upshur County Deputy Sheriff Jason Queen also reported to the crash scene. His description of the scene and petitioner's condition was consistent with the testimony of Trooper Lowry. Deputy Queen testified that petitioner smelled of alcohol, was unsteady, and slurred his speech. Additionally, the circuit court admitted photographs of the scene taken by Deputy Queen that showed Ms. Currence's lower body positioned in the passenger side of the vehicle. Another State's witness, licensed paramedic and county medical examiner Keith Queen, testified that Ms. Currence could not have been in the driver's seat at the time of the accident and then moved to the passenger seat given the amount of damage done to the passenger side of the vehicle. Mr. Queen testified that the collapse of the truck's roof likely pinned Ms. Currence in place in the passenger seat.

After the close of the State's evidence, petitioner moved for judgment of acquittal on the basis that the State failed to show that petitioner was driving at the time of the accident; that the State failed to show that petitioner refused to give information or render aid; and that prosecution for both DUI causing death and negligent homicide violated the prohibition against double jeopardy. The circuit court denied petitioner's motion. Petitioner did not testify or call any witnesses in his defense. Following the parties' closing arguments and instructions from the circuit court, the jury found petitioner guilty of the above-mentioned charges.

---

[2] At trial, petitioner stipulated that his driver's license was revoked for driving under the influence at the time of the accident.

The circuit court sentenced petitioner to one year of incarceration for DUI causing death (Count 1);[3] one year of incarceration for negligent homicide (Count 3); one to five years of incarceration for leaving the scene of the accident (Count 4); and one to three years of incarceration for driving while revoked for DUI (Count 5).[4] The circuit court ordered that the one-year sentences for Counts 1 and 3 be served concurrently; that the sentences for Counts 4 and 5 be served consecutively; and that the sentences for Counts 4 and 5 be served consecutively to the concurrent sentences for Counts 1 and 3. Following the denial of petitioner's motion for reduction of sentence, the circuit court resentenced petitioner by order entered on November 29, 2015. This appeal followed.

**Discussion**

On appeal, petitioner raises the following six assignments of error: (1) the convictions and sentences for DUI causing death and negligent homicide violate principles of double jeopardy; (2) the sentence imposed by the circuit court is excessive under the circumstances of the case; (3) the circuit court erred by not properly giving the petitioner credit for time served or good time on his sentence; (4) there was insufficient evidence to sustain the conviction because the State failed to prove the cause of death of the victim; (5) the circuit court erred when it denied petitioner a separate trial on the charge of driving on a revoked license; and (6) the circuit court made several errors at trial, the cumulative effect of which denied the petitioner a fair trial.

With respect to our standard of review for petitioner's arguments, this Court has held as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With this standard in mind, we now turn to petitioner's assignments of error.

Petitioner's first argument is that his convictions for DUI causing death and negligent homicide violate double jeopardy principles. We review petitioner's claim de novo. *See* Syl. Pt. 1, *State v. Sears,* 196 W. Va. 71, 468 S.E.2d 324 (1996). Petitioner argues that the two offenses are substantially identical in that they both require a reckless disregard for the safety of others.

_____

[3] Petitioner was indicted for DUI causing death pursuant to West Virginia Code § 17C-5-2(a) (2010), a felony punishable by incarceration for two to ten years. He was convicted of the lesser-included misdemeanor offense pursuant to West Virginia Code § 17C-5-2(b), which was punishable by incarceration for not less than ninety days nor more than one year.

[4] Count 2 charged petitioner with a second count of driving under the influence causing death, and was dismissed prior to trial.

Petitioner further argues that this case involves one act of driving and one death; however, he was punished twice. Finally, petitioner adds that his concurrent sentences do not cure the problem because the parole board will take notice that petitioner was convicted of four crimes, instead of three.

Our law governing double jeopardy claims is set forth in syllabus points two through five of *Sears*, in which we held as follows:

> 2.     In order to establish a double jeopardy claim, the defendant must first present a *prima facie* claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant.

> 3.     The purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments.

> 4.     The strength of a double jeopardy claim is whether a defendant is facing multiple punishment for the same course of conduct. To determine if a particular statutory sanction constitutes punishment for double jeopardy purposes, courts should consider: (1) whether the statute serves solely a remedial purpose or serves to punish and deter criminal conduct and (2) whether the Legislature tied the sanction to the commission of specific offenses.

> 5.     Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), if two statutes contain identical elements of proof, the presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible.

Upon our review, we find no violation of double jeopardy principles in this case because the two crimes at issue do not contain identical elements of proof. West Virginia Code § 17C-5-1(a), provides that a person is guilty of negligent homicide "[w]hen the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle anywhere in this state in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." In contrast, the misdemeanor offense of DUI causing death, at the time of petitioner's offenses, required proof that petitioner drove a vehicle in this state while he

(A) [was] under the influence of alcohol;
(B) [was] under the influence of any controlled substance;
(C) [was] under the influence of any other drug;

4

(D) [was] under the combined influence of alcohol and any controlled substance or any other drug; or

(E) [had] an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight; and

(2) While driving [did] any act forbidden by law or fail[ed] to perform any duty imposed by law in the driving of the vehicle, which act or failure proximately cause[d] the death of any person within one year next following the act or failure[.]

W.Va. Code § 17C-5-2(b)(2) (2010), in pertinent part.[5] Negligent homicide requires proof of reckless driving, while DUI causing death requires driving while under the influence of alcohol, drugs, a combination of the alcohol and drugs, or with a blood alcohol concentration of .08 or more, and that the driver committed an illegal act or failed to perform a legal duty. The elements are plainly different; the two statutes prescribe punishments for different actions. Thus, we find no merit to petitioner's double jeopardy claim.

In his second assignment of error, petitioner argues that his sentence is excessive under the circumstances of this case. "Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Additionally, we have held as follows:

> 7.　　A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution.

> 8.　　Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence."

Syl. Pts. 7 and 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980).

In the present case, the circuit court ordered that a portion of petitioner's sentence be served concurrently. As a result, after being credited for time served, petitioner received an effective sentence of two to eight years in prison for criminal conduct that violated four statutes and that involved the death of another person. Petitioner's sentence is in no way, shape, or form, excessive under the circumstances of this case.

Petitioner's third assignment of error is that the circuit court failed to properly award credit for time petitioner had already served. Petitioner states that the circuit court awarded him three-hundred and eighty-nine days of credit for time served and applied three-hundred and

---

[5] Under the version of West Virginia Code § 17C-5-2(b)(2) effective at the time of petitioner's conduct, the penalty was a misdemeanor. In 2016, the legislature amended the statute to make a violation a felony, punishable by incarceration for three to fifteen years.

sixty-five of those days toward the concurrent one-year terms, with the remaining twenty-four days being applied to the two to eight year sentence. Petitioner first argues that the circuit court should have awarded him five-hundred and forty-nine days because he was in jail since October 6, 2013. Second, petitioner argues that when the circuit court applied the three-hundred and sixty-five days to the concurrent term, it deprived him of the ability to earn credit for "good time," which, he states, is five days per month.

However, petitioner fails to acknowledge that when he was arrested on the current charges, he was on home confinement for previous charges. His home confinement was revoked and he was ordered to serve one-hundred eighty days (with credit for twenty-four days) in jail on the previous charges. Therefore, of the five-hundred forty-nine days that petitioner was in jail, one-hundred fifty-six of those days were spent serving on different charges. Secondly, petitioner is not entitled to good time for the discharged one-year sentence for the concurrent misdemeanors. The court discharged the sentence because petitioner was entitled to credit for time served; there is no legal support for his contention that he is entitled to any additional credit for "good time." Accordingly, petitioner's third assignment of error has no merit.

In his fourth assignment of error, petitioner argues that there was insufficient evidence to sustain three of his convictions because there was no definitive proof that he was driving or of how Ms. Currence died. Specifically, petitioner contends that there was no autopsy; that the medical examiner could not find that Ms. Currence suffered a broken back or fractured skull; and that it is possible that Ms. Currence died before the accident.

This Court has held that

[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Additionally, we held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *id.*

Upon our review of the trial evidence, there was sufficient, albeit circumstantial, evidence that petitioner was driving at the time of the accident and that Ms. Currence was in the passenger seat. Because of the damage to the top and passenger side of the vehicle, there was little to no way that petitioner could have exited the truck if, indeed, he was the passenger. Additionally, there was sufficient evidence that petitioner was under the influence given the testimony that his eyes were bloodshot and glassy and that his gait was unsteady. Accordingly, because we view the evidence "in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution," we find that the evidence was sufficient to sustain petitioner's convictions. *See Id.*

In his fifth assignment of error, petitioner challenges the circuit court's denial of his request for a separate trial for the charge of driving on a revoked license for DUI. Petitioner moved for separate trials pursuant to Rule 14 of the West Virginia Rule of Criminal Procedure. Petitioner argues that he was obviously prejudiced with respect to Count 1 because he was on trial for DUI and the jury heard that his license had already been revoked for a prior DUI.

In syllabus point one of *State v. Rash*, 226 W. Va. 35, 697 S.E.2d 71 (2010), this Court held that

> [e]ven where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va. R. Crim. P. 14(a) is a matter within the sound discretion of the trial court. (Citations omitted).

In the present case, in arguing that his sentence is excessive, petitioner admits that all of the charges stem from a single transaction. Given the nature of the charges, the circuit court did not abuse its discretion by ordering a unitary trial. Thus, we reject petitioner's fifth assignment of error.

Petitioner's final assignment of error is that he was denied a fair trial as a result of the cumulative effect of the circuit court's errors. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972). As the above discussion indicates, the circuit court did not make "numerous errors" such as would implicate the cumulative error doctrine. Accordingly, petitioner's final assignment of error has no merit.

For the foregoing reasons, we affirm.

Affirmed.

7

**ISSUED:**  September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker